IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COY A. MATHIS,                              )
                                            )
                        Petitioner,         )
                                            )
        v.                                  )        Case No. 07-3049-JWL
                                            )
SAM CLINE, Warden of the                    )
Hutchinson Correctional Facility, et al.,   )
                                            )
                        Respondents.        )
                                            )
_____    )

## MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 2254, petitioner seeks relief from his state-court conviction.  For the reasons set forth below, the court **denies** the petition (Doc. # 1).  In so ruling, the court **grants** respondents' motion to strike portions of petitioner's traverse (Doc. # 44); **grants in part and denies in part** petitioner's motion to expand the record (Doc. # 45); and **denies** petitioner's second motion to expand the record (Doc. # 49).

## I.    Background

After a jury trial in August 2001, petitioner was convicted in the District Court for Wyandotte County, Kansas, of felony murder in connection with the physical abuse and resulting death of petitioner's two-year-old son in December 2000.  After petitioner filed his direct appeal, the Kansas Supreme Court remanded the case to the trial court for

consideration of petitioner's post-conviction motion under K.S.A. § 60-1507, in which

the petitioner alleged ineffective assistance of trial counsel.   After conducting an

evidentiary hearing, the trial judge denied the motion.   The Kansas Supreme Court then

upheld the conviction and the denial of petitioner's motion pursuant to section 60-1507.

*See State v. Mathis*, 281 Kan. 99, 130 P.3d 14 (2006).   Petitioner now raises in this court

the same issues that he argued unsuccessfully in the Kansas courts.[1]


## II.   Standards Governing Review Under 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in

relevant part at 28 U.S.C. § 2254, governs the court's review.   Under section 2254, as

amended by the AEDPA, the court may not issue a writ of habeas corpus with respect

to any claim that the state court adjudicated on the merits unless that adjudication

> (1)   resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d)(1), (2).   Under the "contrary to" clause of paragraph (1), the court

may issue a writ of habeas corpus only if (a) the state court arrived at a conclusion

opposite to that reached by the United States Supreme Court on a question of law, or (b)

---

[1]Although petitioner filed his petition pro se, he subsequently retained counsel,
who filed his traverse and litigated the issues relating to the expansion of the state court
record.

the state court decided the case differently than the Supreme Court on a set of materially

indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

"unreasonable application" clause of paragraph (1), the court may grant habeas relief if

the state court "correctly identifies the governing legal rule but applies it unreasonably

to the facts of a particular prisoner's case." *Id.* at 407-08. The court may not issue a writ

simply because it concludes, in its independent judgment, that the state court applied

clearly established federal law erroneously or incorrectly; rather, the application must

have been objectively unreasonable. *See id.* at 409-11.


### III.     Motions Relating to Expansion of Record

Petitioner has claimed that his trial counsel's representation was constitutionally

infirm because she did not retain an expert medical witness. In his traverse, petitioner

relies on the declaration of such an expert in arguing that the outcome of the trial would

have been different had an expert testified on petitioner's behalf at trial. Petitioner did

not present any such expert testimony to the trial court at the hearing on his ineffective

assistance claim. Accordingly, petitioner has filed a motion to expand the record beyond

those matters considered by the state courts, pursuant to Rule 7 of the Rules Governing

Section 2254 Cases, so that this court may consider the expert declaration. Respondents

have moved to strike the portion of the traverse in which petitioner relies on this new

medical evidence.

Section 2254 requires that a petitioner first exhaust state court remedies. *See* 28

3

U.S.C. § 2254(b)(1). The exhaustion requirement is satisfied if a claim is "fairly presented" to the state courts. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). The statute further provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> . . .
>
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* § 2254(e).

The United States Supreme Court has permitted the expansion of the existing record under Rule 7 when the supplemental evidence does not "fundamentally alter the legal claim already considered by the state courts," and thus the policies of the exhaustion requirement are not undermined. *See Vasquez v. Hillery*, 474 U.S. 254, 258-60 (1986). Thus, as stated by the Tenth Circuit, "[w]hile a habeas petitioner might still be able to present to a federal habeas court 'bits of evidence' not previously presented in state court, he cannot first present evidence in a federal habeas proceeding that 'places the claim in a significantly different legal posture' without first presenting that evidence in state court." *Hawkins v. Mullin*, 291 F.3d 658, 670 (10th Cir. 2002) (quoting

4

*Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997)).

The court concludes that consideration of petitioner's new expert medical evidence would undermine the exhaustion requirement. In his post-conviction hearing before the trial court, petitioner presented expert testimony by an attorney in arguing that his trial counsel should have retained a medical expert, but he did not present any evidence concerning the opinions such an expert would have formed. Nor did petitioner present any other evidence or argument to establish the requisite prejudice for his ineffective assistance claim. Therefore, petitioner's newly-obtained expert evidence on the issue of prejudice is not a mere "bit of evidence" corresponding to evidence or arguments presented to the state courts, but instead "places the claim in a significantly different legal posture" and therefore would fundamentally alter petitioner's claim as it was made in state court. Consequently, petitioner must satisfy the exception set forth in section 2254(e)(2).

The court concludes that petitioner's new expert evidence does not represent "a factual predicate that could not have been previously discovered through the exercise of due diligence." *See* 28 U.S.C. § 2254(e)(2)(A)(ii); *see also Williams v. Taylor*, 529 U.S. 420, 432 (2000) (failure to develop a factual predicate under paragraph (e)(2) will not be found unless a lack of diligence or some greater fault by the petitioner or counsel is shown). Petitioner argues that his counsel during the section 1507 proceedings diligently but unsuccessfully attempted to obtain the pertinent medical records relating to the crime from either the prosecutor or petitioner's trial counsel. Counsel did not act with due

5

diligence, however, in failing to present this evidence from the new expert to the trial court.  Post-conviction counsel may have believed that he was absolutely entitled to obtain the medical records from trial counsel, but he never sought the court's help in compelling the production of the records—a letter to the trial court on the day scheduled for the court's ruling, after neglecting to mention the records in oral argument, does not constitute due diligence in this respect.  *See Williams*, 529 U.S. at 439 (counsel did not act diligently when he failed to do anything further after prosecutor refused request for documents).[2]

Furthermore, petitioner has not explained how the absence of the medical records prevented him from retaining an expert for the post-conviction hearing.  Petitioner could certainly have used an expert to attack the prosecution's own medical experts, based on their testimony at trial and at the preliminary hearing, in an attempt to show prejudice. It does not appear, however, that petitioner attempted to put on *any* evidence of prejudice at the hearing.  If a review of the medical records was indeed key to establishing prejudice at the hearing, petitioner was at least obligated to raise the issue or note that fact before the trial judge at the post-conviction hearing.

The court thus concludes that consideration at this time of the new evidence of prejudice offered by petitioner, which was not presented to the state courts, would

---

[2]Moreover, even though trial counsel testified at the post-conviction hearing concerning her refusal to produce the records, post-conviction counsel failed to press the issue with the court at that time.

undermine the exhaustion requirement.  Accordingly, the court grants respondents' motion to strike and denies petitioner's motions to expand the record to include new evidence from the medical expert.[3]

Petitioner has also moved to expand the record to include portions of the transcript from petitioner's preliminary hearing.  Petitioner's motion is denied to the extent that it relates to medical testimony concerning the timing of the injuries and death, for the reasons set forth above relating to the new medical evidence.  Petitioner's motion is granted with respect to testimony of the victim's mother; respondents have not opposed that request, and the consideration of such evidence will not fundamentally alter petitioner's claim that his trial counsel was ineffective in failing to object to certain testimony by that witness at trial.

---

[3]The court has considered the evidence concerning counsel's efforts to obtain the documents in ruling on the motions to strike and to expand the record; the court will not expand the record to include such evidence for consideration in ruling on the substance of petitioner's claims, however, and the motions to expand are therefore denied as they relate to such evidence.

**IV.**   **Review of Section 2254 Petition**

In his pro se petition, petitioner merely incorporates his arguments from his original appellate brief to the Kansas Supreme Court and his brief in support of his trial court post-conviction motion. The court addresses those arguments in turn.

A.   *Juror Misconduct*

In moving for a new trial in the trial court and on direct appeal, petitioner argued that he was deprived of his Sixth Amendment right to an impartial jury because two jurors engaged in misconduct by giving intentionally false answers to questions on voir dire. *See Gonzales v. Thomas*, 99 F.3d 978, 984 (10th Cir. 1996) (in order to obtain new trial, state habeas petitioner must show that juror intentionally withheld truthful response to material question and that honest answer would have created a valid basis to challenge for cause) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)) . Petitioner alleged that he learned after trial that one juror was petitioner's half-brother's uncle, had worked as a custodian at petitioner's high school, and had worked as a deputy sheriff at a jail while petitioner served time there; and that the other juror had previously been married to the first juror's brother, who had also dated petitioner's mother at the same time. Petitioner argued that the jurors should have responded affirmatively when asked whether they recognized petitioner or any other juror. The Kansas Supreme Court upheld the trial court's ruling that petitioner had failed to show that the jurors did recognize petitioner (petitioner did not recognize the jurors either) or each other and that they had therefore engaged in misconduct. *See Mathis*, 281 Kan. at

105, 130 P.3d at 20.

Before this court, petitioner has not suggested any reason why those courts acted unreasonably in reaching that decision. Petitioner has not pointed to any evidence that the jurors in fact knew him or each other. The court concludes that the state courts' rulings were reasonable, and this claim by petitioner is therefore denied.

In the traverse filed by his counsel, petitioner also argued that he was denied the right to an impartial jury because of the jurors' implied bias against him. *See Gonzales*, 99 F.3d at 985 (actual juror bias and implied bias constitute bases for relief separate from intentional falsehoods). Petitioner did not present the issue of implied (or actual) bias to the state courts, however, and therefore he has failed to meet his exhaustion requirement. *See* 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

The court also denies this claim on its merits. *See* 28 U.S.C. § 2254(b)(2) (petition may be denied on merits notwithstanding failure to exhaust). The Tenth Circuit has stressed that the implied bias doctrine "should not be invoked lightly" and "must be reserved for those 'extreme' and 'exceptional' circumstances that leave serious question whether the trial court subjected the defendant to manifestly unust procedures resulting in a miscarriage of justice." *Gonzales*, 99 F.3d at 987 (internal quotations and alterations omitted) (quoting *Smith v. Phillips*, 455 U.S. 209, 222 & n. (1982) (O'Connor, J., concurring)). The attenuated relationships alleged by petitioner between the jurors and petitioner's relatives do not present circumstances so "extreme" and "exceptional" that bias in those jurors should be inferred. *Cf. id.* (quoting *Smith*, 455 U.S. at 222

9

(O'Connor, J., concurring)) (example of implied bias might include situation in which juror is a "close relative" of a participant at trial). The court denies habeas relief to petitioner based on juror misconduct or bias.

B.   *Sufficiency of the Evidence*

Petitioner also argues that the evidence at trial was not sufficient to support his conviction. The United States Supreme Court has set forth the following standard to govern such a claim: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Kansas Supreme Court applied this same standard in rejecting this argument by petitioner on direct appeal. *See Mathis*, 281 Kan. at 105-06, 130 P.3d at 20-21.

Petitioner argues that the evidence was not sufficient for his conviction because the victim's mother also had the opportunity to commit the crime. The court rejects this argument. In this case, the prosecution presented medical evidence that the injuries that led to the victim's death most likely occurred during the time period in which petitioner cared for the victim and the victim's mother was absent. Moreover, the mother testified that her child appeared normal when she left home and had already been injured when she returned. In viewing the evidence in the light most favorable to the prosecution, the court must credit the mother's testimony over petitioner's denials. Accordingly, the state courts did not act unreasonably in concluding that a rational jury could have found

10

petitioner guilty beyond a reasonable doubt, and the court denies this claim for relief.

C.   *Evidentiary Rulings*

Petitioner argues that the trial court erred in admitting certain evidence at trial. The Kansas Supreme Court noted that petitioner did not object when any of the challenged evidence was admitted at trial, but it nonetheless reviewed and denied petitioner's evidentiary claims on the merits. *See Mathis*, 281 Kan. at 107, 130 P.3d at 21.

Petitioner first argues that the trial court erred in admitting a letter that he wrote to the victim's mother while in jail after his arrest, and that he therefore had to testify to explain the letter in violation of his right against self-incrimination under the Fifth Amendment. The Kansas Supreme Court did not address the constitutional aspect of this argument, instead concluding that the trial court had not abused its discretion under Kansas law in admitting the letter. *See id.* Petitioner has not explained or provided any authority to support an argument that the Fifth Amendment may be implicated in this way (the argument has been abandoned in the traverse).

The court rejects this basis for relief.  In considering petitioner's ineffective assistance claim, the trial court credited the testimony of trial counsel (over petitioner's contrary testimony) that petitioner actually wanted the letter in evidence to support his defense, and that factual finding by the trial court was not unreasonable.  Moreover, even though petitioner testified at the post-conviction hearing concerning the letter, he did not offer any testimony about his decision to take the stand at trial.  Thus, even assuming

11

petitioner could implicate the Fifth Amendment in this way, he has not shown that he was compelled to testify against his will.

Petitioner also argued to the state courts that the letter and other evidence should not have been admitted under Kansas's evidentiary rules, and he has incorporated those same arguments by reference in his habeas petition.  In state court, petitioner did not argue these errors as violations of the federal Constitution, however; he may have made reference to a general right to a fair trial, but he framed the trial court's conduct as an abuse of discretion and not as a denial of due process.  Accordingly, he may not raise these issues for the first time here.  *See* 28 U.S.C. § 2254(c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

The court also denies any possible constitutional claim on the merits.  *See* 28 U.S.C. § 2254(b)(2).  A mere abuse of discretion in applying evidentiary rules, as alleged by petitioner, would not warrant relief here:

> A habeas petitioner is only entitled to relief . . . for alleged violations of federal rights, not for errors of state law.  Generally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief.

*Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) (citations omitted).  Petitioner must show that the alleged error was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Id.* (quotation omitted).  As the Tenth Circuit has noted:

> [T]he Supreme Court has defined "the category of infractions that violate fundamental fairness very narrowly.  Beyond the specific guarantees

enumerated in the Bill of Rights, the Due Process Clause has limited operation."

*Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 73 (1991)).

After reviewing the evidentiary errors alleged by petitioner in this case, the court concludes that the Kansas courts did not act unreasonably in applying their own evidentiary rules. Nor has petitioner shown that the alleged errors made his trial so fundamentally unfair as to amount to a violation of due process. Accordingly, the court denies this claim for relief.

### D. *Cumulative Error*

On direct appeal, petitioner argued that the cumulative effect of trial errors entitled him to a new trial, and he has incorporated that claim by reference in his habeas petition. Cumulative-error analysis applies only where the record reveals two or more actual errors, and petitioner is entitled to relief only if the entire trial was so fundamentally unfair as to constitute a violation of his due process rights. *See Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir. 1997). Petitioner has not shown multiple trial errors or that his trial was so fundamentally unfair as to violate due process, and the Kansas Supreme Court did not act unreasonably is reaching a similar conclusion. *See Mathis*, 281 Kan. at 111, 130 P.3d at 23. The court therefore denies this basis for relief.

### E. *Ineffective Assistance of Counsel*

Finally, petitioner argues that he was denied the effective assistance of trial counsel. Specifically, petitioner cites his counsel's conduct in voir dire and jury

selection with respect to a juror who worked in law enforcement; counsel's failure to object to the admission of certain evidence; and her failure to retain an expert medical witness to testify or assist at trial. After conducting an evidentiary hearing, the trial court denied petitioner's claims of ineffective assistance of counsel, and the Kansas Supreme Court upheld the trial court's ruling. *See Mathis*, 281 Kan. at 110-11, 130 P.3d at 23.

Under the familiar two-part standard, a person alleging ineffective assistance of counsel  in violation of the Sixth Amendment must show the following:

> (1) trial counsel was deficient, i.e., "counsel's representation fell below an objective standard of reasonableness"; and (2) the deficiency prejudiced his defense, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Boyle v. McKune*, 544 F.3d 1132, 1137 (10th Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "There is a strong presumption that counsel's performance falls within the wide range of professional assistance; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 688-89). A reviewing court must apply "a heavy measure of deference to counsel's judgments" in assessing the reasonableness of a particular decision not to investigate. *Strickland*, 466 U.S. at 691. "[W]here it is shown that a particular decision was, *in fact*, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *Bullock v. Carver*, 297 F.3d 1036,

1046 (10th Cir. 2002).

1.      Petitioner first argues that trial counsel's performance was deficient because of her performance in voir dire and jury selection (an argument seemingly abandoned in petitioner's traverse). Specifically, petitioner argues that counsel should have posed additional questions to, attempted to strike for cause, and used a peremptory strike on a particular juror who worked in law enforcement. The court rejects this claim.

In her testimony at the post-conviction hearing before the trial court, trial counsel identified several reasons for accepting the officer as a juror, including the following: the juror had no specific knowledge of the case or petitioner, and she did not believe grounds existed to strike him for cause; she viewed it as a positive that he knew the trial judge; although he was a law enforcement officer, he worked at the jail and not on the street, and he therefore was likely to be fairer than the average officer; he and the accused were both African-American males; and petitioner also wanted him on the jury. The trial court credited this testimony in finding that counsel had had a reasonable basis for the "judgment call" she made with respect to this juror. The trial court thus found that neither prong of the *Strickland* analysis had been met, as counsel's performance was not deficient and the court was confident that the outcome would have been the same had the juror been struck.

The court rejects the petitioner's argument that the juror should have been challenged and struck simply because he worked in law enforcement, as each such decision must be evaluated on a case-by-case basis. "Generally, an attorney's actions

15

during voir dire are considered to be matters of trial strategy, which cannot be the basis of an ineffective assistance claim unless counsel's decision is so ill chosen that it permeates the entire trial with obvious unfairness." *Neill v. Gibson*, 278 F.3d 1044, 1055 (10th Cir. 2001) (internal quotes omitted).  In this case, trial counsel articulated several reasonable bases for her decision, and petitioner has not shown that that decision was so ill chosen as to make the entire trial obviously unfair.  The Kansas courts did not act unreasonably in concluding that petitioner failed to show either a deficient performance or prejudice with respect to jury selection; therefore, the court denies this claim for relief.

2.    Petitioner also claims that his trial counsel's representation was constitutionally infirm because she failed to object to the admission of evidence at various times during trial.  The court rejects each such claim.

First, petitioner claims that trial counsel should have objected to the admission of his letter to the victim's mother in which he expressed sorrow for unspecified past actions.  *See supra* Part IV.C.  Petitioner argues that the letter constituted inadmissible hearsay; was not relevant because its contents did not relate to the crime at issue; and was unfairly prejudicial because it contained a couple of expletives.  Even as petitioner argues that the letter was not relevant, he nonetheless argues that its admission greatly affected the trial, as the prosecution was able to suggest to the jury that petitioner was expressing guilt about his crime in the letter.

The court concludes that the state courts did not act unreasonably in ruling that counsel's representation was not deficient in this regard.  Although petitioner testified

to the contrary, trial counsel testified that petitioner wanted the letter admitted to demonstrate a continuing relationship with the mother, from which the jury might infer that the mother did not hold petitioner responsible for the crime.   The trial court's acceptance of that testimony by trial counsel is not unreasonable.   Trial counsel further testified that she did not believe that the letter, authored by a party, represented inadmissible hearsay; that she believed that the letter was legally relevant for evidentiary purposes, in light of the prosecution's argument that petitioner admitted guilt in the letter; that the use of the expletives, in their context, was not particularly shocking or prejudicial; and that the admission of the letter—which included a religious reference, spoke of obtaining a nice tombstone for the victim, and could have suggested an ongoing relationship with the mother—could actually be beneficial to petitioner's case.   These reasons expressed by trial counsel make sense, and her decision to allow the letter into evidence, in accordance with the wishes of her client, was not constitutionally deficient.

Moreover, petitioner has not shown that an objection to the letter's admission would have been sustained, and that the outcome of the trial might therefore have been different.   The Kansas Supreme Court has ruled that the letter did not constitute inadmissible hearsay, *see Mathis*, 281 Kan. at 107, 130 P.3d at 21, and as trial counsel noted, the letter does have relevance and its language is not particularly prejudicial. Accordingly, petitioner has not established the requisite prejudice, and his claim of ineffective assistance must fail.

Second, petitioner claims that trial counsel should have objected to the admission

of certain testimony by the victim's mother and grandmother, mainly on grounds of hearsay and relevance.  Trial counsel testified that she did not want to draw more attention to these statements by raising an objection, and that such testimony could also have benefitted petitioner's case by demonstrating animosity between petitioner and the family of the victim's mother, in support of petitioner's defense that that family blamed petitioner for the crime because they didn't like him.  The trial court accepted this reasoning of counsel as acceptable trial strategy.

The court concludes that the state courts did not act unreasonably in ruling that counsel's failure to object constituted deficient representation under *Strickland*, for the reasons set forth by trial counsel and because, as ruled by the Kansas Supreme Court, the testimony was not inadmissible.  *See id.* at 107-08, 130 P.3d at 21-22.  The Kansas Supreme Court's admissibility ruling also undermines any claim of prejudice, as petitioner cannot show that an objection would have been sustained.  The court denies this claim of ineffective assistance.

Third, petitioner argues that trial counsel should have objected to the admission of the victim's prior medical records.  Petitioner argues that the records were irrelevant and unduly prejudicial because they did not really show prior abuse of the child.  The court rejects this claim.  Trial counsel testified that she did not object because the records appeared relevant and she knew that an objection would be overruled.  The trial judge agreed that the evidence was relevant to the issue of the timing of the victim's injuries, and he further stated that he was "fairly confident" that he would have overruled an

18

objection to the evidence, if asserted.  The Kansas Supreme Court did in fact rule that the evidence was relevant to isolate the time of the abuse and to rebut the petitioner's argument that the mother had committed the abuse, and that the evidence was not unfairly prejudicial.  *See id.* at 108-09, 130 P.3d at 22.  Based on these facts, the court concludes that the state courts did not act unreasonably in ruling that counsel's performance was not deficient in failing to object to the records and that petitioner failed to show prejudice from the alleged deficiency.

Fourth, petitioner argues that trial counsel should have objected to testimony by the victim's mother that (1) the victim did not like to be around petitioner after he was released from jail and (2) she left the house to purchase marijuana for petitioner before returning and discovering the injuries to the victim on the day of the fatal abuse. Petitioner argues that such testimony constituted evidence of prior bad acts under K.S.A. § 60-455, and that a proper purpose for its admission had not been shown.

Trial counsel testified that she did not object to the reference to petitioner's having been in jail because such information and his status as a parolee was in fact necessary to petitioner's explanation as to why he fled the scene when police officers arrived.  She further testified that she did not object to the marijuana testimony because, in the context of the charged offense, evidence about marijuana use was simply not particularly prejudicial to the defense.  The trial judge did not directly address the "jail" testimony in rejecting this claim, although he stated that the marijuana evidence did not affect the outcome of the case.  The Kansas Supreme Court upheld the denial of this

ineffective assistance claim.  *See id.* at 110-11, 130 P.3d at 23.  The appellate court also upheld the admission of the evidence, noting that there had been no testimony about why petitioner had been in jail and that the victim's mother (another possible perpetrator, according to the defense) had been the one who actually committed the crime of purchasing the marijuana.  *See id.* at 109, 130 P.3d at 22.

The court concludes that the state courts did not act unreasonably in rejecting this claim of ineffective assistance of counsel.  Given the reasons set forth by trial counsel and the appellate court's ruling that the evidence was not inadmissible, trial counsel's decision not to object was not deficient under the deferential *Strickland* standard. Moreover, the court agrees with trial counsel that the marijuana evidence was not particularly prejudicial as viewed in the context of the entire trial, and the trial court's ruling that the admission of the marijuana testimony did not meet the prejudice requirement is not unreasonable.  Nor has petitioner shown that the outcome of his trial would have been different had an objection to the "jail" testimony been asserted at trial. The court denies this claim of ineffective assistance.

3.      Petitioner's final claim, and the main emphasis of his traverse, is that trial counsel rendered ineffective assistance by failing to retain a medical expert to assist with review of the medical records and the testimony of the prosecution's experts and to testify on petitioner's behalf.  Petitioner argues that the prosecution's evidence regarding the timing of the injuries to the victim was key to its case, and that counsel was obligated

at least to hire an expert to investigate that issue of timing.[4]

At the post-conviction hearing, petitioner's trial counsel testified that she did discuss the case with a qualified medical expert, who agreed that there was no reason to present expert testimony at trial in opposition to the prosecution's experts. She also testified that in her discussions with her client, petitioner did not contest the fact that the victim suffered the fatal injuries within the time frame stated by the prosecution's experts. In rejecting this claim, the trial court gave weight to this testimony by trial counsel. The trial court further noted that petitioner had not presented any medical evidence contradicting the prosecution's expert timing evidence, and that petitioner had therefore failed to show that there was a real reason to retain an expert to contest the timing issue. Based on those facts as reasonably found by the trial court and applying the necessary deference to the judgment of trial counsel, the court concludes that the state courts did not act unreasonably in ruling that trial counsel's performance was not deficient as it related to the decision not to retain a medical expert.

Petitioner has also failed to satisfy the prejudice prong of the *Strickland* test because he has not shown that the outcome of his trial would have been different had trial counsel retained a medical expert. In litigating this issue in the state courts, petitioner did not state how a defense expert would have testified, nor did he offer any

---

[4]Petitioner has also submitted evidence from a medical expert that purports to contradict the testimony regarding timing from the prosecution's medical experts. As discussed above, such evidence of prejudice was not submitted to the state courts and will not be considered by this court. *See supra* Part III.

other evidence to contradict the timing opinions of the prosecution's medical experts. "When an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must demonstrate, with some precision, the content of the testimony they would have given at trial." *Martinez v. Tafoya*, 13 F. App'x 873, 877 (10th Cir. July 17, 2001) (internal quotation omitted).  Petitioner did not offer *any* such evidence of prejudice in the state courts; therefore, he has not established a constitutional violation under *Strickland*, and this claim must be denied.[5]

IT IS THEREFORE ORDERED BY THE COURT THAT petitioner's petition for relief pursuant to 28 U.S.C. § 2254 (Doc. # 1) is **denied**.

IT IS FURTHER ORDERED THAT respondents' Motion to Strike Portions of Petitioner's Traverse (Doc. # 44) is **granted**.

IT IS FURTHER ORDERED THAT Petitioner's Motion to Expand the Record (Doc. # 45) is **granted in part and denied in part** as set forth herein.

IT IS FURTHER ORDERED THAT Petitioner's Second Motion to Expand the Record (Doc. # 49) is **denied**.

IT IS SO ORDERED.

---

[5]The court concludes that an evidentiary hearing is not necessary in this case to resolve disputed facts concerning the proceedings in state court. *See Medina v. Barnes*, 71 F.3d 363, 366 (10th Cir. 1995) (setting forth requirements for entitlement to evidentiary hearing in federal habeas action).

Dated this 2nd day of February, 2009, in Kansas City, Kansas.

s/ John W. Lungstrum

John W. Lungstrum

United States District Judge
